IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD CAMPBELL,

                Plaintiff,

    v.

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

                Defendant.

CIVIL ACTION
NO. 19-3226

## OPINION

Slomsky, J.                                                            September 3, 2021

## I.     INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment.  (Doc. No. 20.)  In its

Motion, Defendant Travelers Insurance ("Travelers") submits that Plaintiff is not entitled to

underinsured motorists ("UIM") coverage under the parties' automobile insurance policy for a

motor vehicle accident.  (See id. at 2.)  It argues that the Court should grant its Motion because the

"regular use" exclusion provision contained in its insurance policy applies, and therefore Plaintiff

cannot show Travelers breached any terms of the policy.  (Id. at 4.)  Plaintiff opposes Travelers'

Motion, contending that Travelers' insurance policy is unenforceable as a matter of law.  (See Doc.

No. 23 at 13.)

For reasons discussed below, and in viewing the facts in the light most favorable to Plaintiff

as the nonmovant, Defendant's Motion for Summary Judgment (Doc. No. 20) will be granted.

## II.    BACKGROUND

This case arises from a motor vehicle accident involving Plaintiff.  (See Doc. No. 20 at 1.)

Plaintiff owned and operated a commercial tractor trailer, and on or about April 2, 2018, he was

driving the tractor trailer southbound on I-295 in Bordentown, New Jersey. (See id.) Suddenly, another driver, Sherin Saleh, lost control of her vehicle and struck Plaintiff's tractor trailer on the driver's side. (See Doc. No. 23 at 5.) Plaintiff alleges he suffered serious and permanent injuries from the collision.[1]  (See id.)

When the accident occurred, Plaintiff was hauling building materials on behalf of Atlantic Precast. (See Doc. No. 20-5 at 2.) At the time, the tractor trailer was insured under a Commercial Auto Policy issued by Northland Insurance Company (the "Northland Policy"). (See Doc. No. 20 at 2 ¶ 4.) The Northland Policy provided for $35,000 in Uninsured/Underinsured Motorist coverage. (See Doc. No. 23 at 15.) Plaintiff also had a personal automobile insurance policy issued by Defendant Travelers (the "Travelers Policy"). (See Doc. No. 20 at 2 ¶ 5.) The Travelers Policy did not insure Plaintiff's tractor trailer. (See id. ¶ 6.)

After the accident, Plaintiff made a claim for his personal injuries against Saleh's insurer and settled that claim for an amount exceeding the bodily injury liability limit of Saleh's policy. (See id. ¶ 7.) Thereafter, Plaintiff submitted claims for UIM benefits to both Northland and Travelers. (See id. ¶ 8.) He settled his claim with Northland, but Travelers denied the UIM claim because it believed the "regular use" exclusion provision contained in the Travelers Policy excluded coverage. (Id. ¶¶ 9-10.) The provision states:

> We do not provide Underinsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by you or any "family member" while occupying or when struck by any motor vehicle that you or any "family member" owns; or that is furnished or available for your or any "family member's" regular use which is not insured for this coverage under this policy. . . .

(Id. at 3-4.)

---

[1]  More specifically, Plaintiff suffered a torn left medial meniscus that requires surgical repair. (See Doc. No. 23 at 5.)

Plaintiff disagreed with Travelers' denial of coverage, and on July 24, 2019 he commenced this action by filing a Complaint.  (Doc. No. 1.)  In the Complaint, he alleges that he is entitled to UIM benefits under the Travelers Policy, "despite any language in the policy to the contrary."  (<u>Id.</u> at 13.)  On January 8, 2021, Defendant filed the instant Motion for Summary Judgment.  (Doc. No. 20.)  In its Motion, Defendant argues that Plaintiff was occupying a vehicle—the tractor trailer—that was available for his regular use that he may have owned but was not insured under the Travelers Policy, and for this reason coverage for UIM benefits is excluded under the Policy's "regular use" exclusion provision.  (<u>See id.</u> at 2.)  Defendant submits that Plaintiff is unable to establish that Travelers breached any terms of the Policy.  (<u>See id.</u> at 4.)

On January 29, 2021, Plaintiff filed a Response in Opposition.  (Doc. No. 23.)  He contends that the only issue before the Court is the propriety of Travelers's denial of the stacked UIM benefits, and whether the denial violates the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVRFL").  (<u>See id.</u> at 8.)  Essentially, Plaintiff argues that summary judgment should be denied because the "regular use" exclusion provision is unenforceable as a matter of law.  (<u>See id.</u> at 13.)

On February 25, 2021, Defendant filed a Reply Brief.  (Doc. No. 24.)  It argues that the "regular use" exclusion provision is an enforceable exclusion that does not violate public policy, but instead comports with the dominant and overarching public policy behind Pennsylvania's MVRFL.  (<u>See id.</u> at 4.)  The Motion for Summary Judgment is now ripe for disposition, and for reasons discussed below, Defendant's Motion will be granted.

## III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision,

the Court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (internal quotations omitted) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). A disputed issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[.]" Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F. 3d 176, 181 (3d Cir. 2009)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. See Anderson, 477 U.S. at 247-49. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the court must credit the non-moving party's evidence over that presented by the moving party. See id. at 255. If there is no factual issue, and only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. See id. at 250.

## IV.   ANALYSIS

Defendant's Motion for Summary Judgment will be granted.  The Court first will address the enforceability of Travelers's "regular use" exclusion provision.  Then, whether the provision precludes Plaintiff's claim against Travelers for UIM benefits.

### A.   Travelers's "Regular Use" Exclusion Provision is Enforceable

Plaintiff contends here that the "regular use" exclusion provision is not enforceable, and Travelers's enforceability arguments are based on a narrow interpretation of Pennsylvania law that has been repudiated.  (See Doc. No. 23 at 8-9.)  Conversely, Defendant submits that Pennsylvania courts routinely uphold "regular use" exclusion provisions akin to its provision.  (See Doc. No. 20-5 at 7.)  For reasons that follow, Traveler's "regular use" exclusion provision is enforceable under Pennsylvania law.

In Barnhart v. Travelers Home & Marine Insurance Co., which concerned a Travelers insurance policy that contained a "regular use" exclusion provision similar to the one in the Travelers Policy at issue here, a court in the Western District of Pennsylvania also faced the issue of whether Travelers's "regular use" exclusion provision was enforceable under Pennsylvania law. See 417 F. Supp. 3d 653 (W.D. Pa. 2019).  There, the court provided a thorough history of Pennsylvania law on the "regular use" exclusion and the UIM provision:

> [T]he parties agree[] that the disposition of the defense's Motion to Dismiss depends on whether this Court expands the holding in Gallagher v. GEICO, --- Pa. ----, 201 A.3d 131 (Pa. 2019), which held that a "household exclusion" in an automobile insurance policy to preclude stacking of underinsured coverage is unenforceable to defeat an underinsured insurance claim.  [Plaintiff] asks this Court to hold that a "regular use exclusion" in her automobile insurance policy to preclude underinsured coverage is also unenforceable based upon the Pennsylvania Supreme Court's reasoning in Gallagher.  [Plaintiff] does not dispute that she cannot recover UIM benefits if the "regular use exclusion" is enforceable.  [Defendant] Travelers contends that the Pennsylvania Supreme Court's holding in Gallagher is distinguishable because the issue in Gallagher concerned a household exclusion as applied to a waiver of stacked coverage.  The present case concerns a "regular use exclusion" as applied to a waiver of . . . UIM benefits.  Travelers argues that

<u>Gallagher</u> is distinguishable and that the Pennsylvania Supreme Court case of <u>Williams v. GEICO Gov't Employees Ins. Co.</u>, 613 Pa. 113, 32 A.3d 1195 (2011) controls in the present case. Travelers also argues that neither <u>Gallagher</u> nor any other Pennsylvania Supreme Court case has overturned the Pennsylvania Supreme Court's holding in <u>Williams</u>. The <u>Williams</u> case upheld the enforceability of the "regular use exclusion" to preclude coverage for an underinsured motorist claim.

In <u>Gallagher</u>, the Pennsylvania Supreme Court held that a motor vehicle insurance policy's "household vehicle exclusion," as applied to preclude stacking of underinsured motorist benefits, violates the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), specifically Section 1738. <u>Gallagher</u>, 201 A.3d at 131. In <u>Gallagher</u>, Brian Gallagher purchased two separate policies from GEICO— one for his motorcycle and one for his automobile. Mr. Gallagher "opted and paid for stacked UM and UIM coverage when purchasing both policies." <u>Id.</u> at 133. Mr. Gallagher was injured when another vehicle struck his motorcycle. <u>Id.</u> Because the tortfeasor was underinsured, he sought UIM stacked coverage under his motorcycle policy and automobile policy. <u>Id.</u> GEICO paid Gallagher's UIM claim under his motorcycle policy, but GEICO denied the UIM claim for the UIM coverage under his automobile policy. GEICO denied the automobile policy UIM claim because of the policy's household vehicle exception, which "precluded Gallagher from receiving stacked UIM coverage pursuant to that policy." <u>Id.</u>

After evaluating the language of the MVFRL, the Pennsylvania Supreme Court in <u>Gallagher</u> concluded that under Subsection 1738(a), "stacked UM/UIM coverage is the default coverage available to every insured," and it can only be waived if the statutorily prescribed waiver form has been signed. <u>Id.</u> at 137. Further, the Court held that the household vehicle exception in Gallagher's policy,

> buried in an amendment, is inconsistent with the unambiguous requirements of Section 1738 of the MVFRL under the facts of this case inasmuch as it acts as a de facto waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily prescribed UIM coverage waiver form.

<u>Id.</u> at 138. The Court also noted that, in <u>Gallagher</u> "GEICO was aware of this reality, as it sold both of the policies to Gallagher and collected premiums for stacked coverage from him." <u>Id.</u> The majority further remarked on the narrow scope of its holding:

> As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL. Unlike the Dissent, we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general, including exclusions relating to racing and other inherently dangerous

activities.  Dissenting Opinion 141-42.  If, at some later date, the
Court is presented with issues regarding the validity of other UM or
UIM exclusions, then we will address them at that time.  Our focus
here is narrow, regardless of the Dissent's lament to the contrary.

Id. at 139, n. 8.

As regards Travelers's assertion that the Williams v. Geico case controls in this
case, [the] said case involved denial of UIM coverage based upon the "regular use
exclusion."  The insured in Williams was a state trooper who was injured while he
was driving in his patrol car.  He filed a UIM claim with GEICO under his personal
automobile insurance policy.  GEICO denied UIM coverage based upon the
"regular use exclusion" under the trooper's personal automobile insurance policy.
The trooper argued that the "regular use exclusion" was void as against public
policy, and/or in conflict with pertinent provisions of the MVFRL.  The parties
specifically argued the issue of whether the regular use exclusion violated 75 Pa.
C. S. § 1731, subsections (c) and (c.1).  Williams, 32 A.3d at 1207.  Those
subsections require the insurer to obtain written and signed waivers of UIM
coverage from the insured on the statutorily prescribed form.  See 75 Pa. C. S.
§ 1731.  The trooper argued that the "regular use exclusion" violated the statutory
waiver procedures and effectively eliminated the mandatory statutory UIM
coverage unless the insured signed the waiver form prescribed by section 1731.
Williams, 32 A.3d at 1207.  In Williams, the Pennsylvania Supreme Court upheld
the "regular use exclusion" stating:

> The regular-use exclusion as applied here is neither an implicit
> waiver of coverage nor an improper limitation on the statutorily
> mandated coverage.  Rather, it functions as a reasonable preclusion
> of coverage of the unknown risks associated with operating a
> regularly used, non-owned vehicle. . . .  [T]he regular-use exclusion
> is not void as against public policy.  A contrary decision is
> untenable, as it would require insurers to compensate for risks they
> have not agreed to insure, and for which premiums have not been
> collected.

Id. at 1208-1209.  The distinction between the Gallagher and Williams cases rests,
in part, on the insurance carriers' awareness of the risks that they agreed to insure.
In Gallagher, GEICO knew of the risks, as it insured both the motorcycle and
automobile, albeit under separate policies, and GEICO charged its insured for
stacked coverage on both policies, and then GEICO denied stacked UIM coverage.
In Williams, GEICO did not know or have reason to know about any other vehicles
the insured would drive or occupy; it did not charge for UIM coverage for any such
other unknown additional vehicles.  As such, its denial of UIM benefits to the state
trooper claimant, based upon the regular use exclusion, was proper.

In addition, the <u>Gallagher</u> and <u>Williams</u> cases addressed two different statutory sections within the MVFRL, stacking (75 Pa. C. S. § 1738) in <u>Gallagher</u>, and UM/UIM coverage (75 Pa. C. S. § 1731) in <u>Williams</u>. Under both sections, an insured must affirmatively sign a statutory waiver form in order to reject stacked coverage under Section 1738 or UM/UIM coverage under Section 1731. [Plaintiff] asserts that the statutory sections are without distinction; and thus, <u>Gallagher</u> should be extended to hold that excluding UM/UIM coverage, by virtue of the "regular use exclusion" without a signed written rejection form is unenforceable. However, as the Pennsylvania Supreme Court observed in <u>Gallagher</u>, the <u>Gallagher</u> claimant could <u>never</u> recover stacked benefits, for which he had paid premiums because he would always be barred by the household exclusion. Therefore, said exclusion acted as a de facto waiver of coverage without the required waiver procedures prescribed by Section 1738. Whereas in <u>Williams</u>, UM/UIM benefits were available, if not rejected on statutory forms, for all vehicles that were insured for said coverage. Premium calculations for said coverages were based upon numbers and types of vehicles insured. Therefore, according to the <u>Williams</u> holding, such exclusion was valid and enforceable.

Presently, the facts of this case align with the <u>Williams</u> decision, because [plaintiff's] claim for UIM coverage and benefits from her accident falls within the "regular use exclusion" of her automobile insurance policy. Unlike <u>Gallagher</u>, [plaintiff] seeks UIM coverage for her injuries from a regularly used vehicle for which she paid no additional UM/UIM premiums to Travelers. Further, unlike <u>Gallagher</u>, [plaintiff's] motorcycle was insured by a different carrier from [plaintiff's] automobile insurer, Travelers. Travelers had no notice that its insured, [plaintiff], would be operating or occupying a motorcycle. Had it known, Travelers could have adjusted its UIM coverage premiums to account for the additional risk to insure for UIM coverage for the motorcycle that [plaintiff] regularly used. Thus, the Pennsylvania Supreme Court's analysis in <u>Williams</u>, regarding the enforceability of the "regular use exclusion," controls in this case. Finally, while <u>Gallagher</u> explicitly overturned a line of decisions concerning the validity of the household exclusion, as applied to Section 1738, stacking of benefits in automobile policies, the Pennsylvania Supreme Court did not overturn <u>Williams</u> or any other line of regular use exclusion cases as applied to Section 1731 UM/UIM coverage and claims. Therefore, <u>Gallagher</u>'s holding does not extend to invalidate the "regular use exclusion" or to overturn <u>Williams</u> as the controlling precedent for this case. [Plaintiff's] argument, against enforceability of the "regular use exclusion," cannot be supported as a matter of law.

<u>Barnhart</u>, 417 F. Supp. 3d at 655-58 (footnotes omitted).

The <u>Barnhart</u> court's reasoning on <u>Williams</u>'s applicability and <u>Gallagher</u>'s limits is applicable to the instant case. First, <u>Barnhart</u>'s reasoning that a "regular use" exclusion provision is not unenforceable as a <u>de facto</u> stacking waiver provision is persuasive. In <u>Gallagher</u>, the

Pennsylvania Supreme Court limited its holding to apply only to "the discrete issue before the [c]ourt[,] . . . holding that the household vehicle exclusion is unenforceable . . . ." Gallagher, 201 A.3d at 139 n.8.  Because the Pennsylvania Supreme Court did not extend the holding of that case, it follows that its Williams decision, which held that "regular use" exclusion provisions are enforceable, is controlling.  See Williams, 32 A.3d at 1208-09.

Second, the Barnhart facts are analogous to the facts here.  Plaintiff's personal vehicle was insured by Travelers and the tractor trailer by Northland.  (See Doc. Nos. 20 at 2; 20-1 at 4-5.) Plaintiff did not pay UIM premiums to Travelers for the tractor trailer involved in the accident. (See ids.)  And Travelers was not on notice that Plaintiff drove the tractor trailer.  As the Barnhart court noted, "[t]he distinction between the Gallagher and Williams cases rests, in part, on the insurance carriers' awareness of the risks that they agreed to insure."[2]  Barnhart, 417 F. Supp. 3d at 657.  Additionally, for reasons discussed below, Plaintiff's claim for UIM coverage under the Travelers Policy falls within the Policy's "regular use" exclusion provision.

Because of Barnhart's persuasive analysis of Gallagher and Williams, as well as its factual similarities to the present case, the Court agrees with Barnhart's reasoning that Gallagher does not apply to invalidate the Travelers Policy's "regular use" exclusion provision.  Thus, this provision is not void as against public policy.

---

[2]   Absent factual support, Plaintiff contends that Travelers and Northland are "in essence, the same company . . . ."  (Doc. No. 23 at 2 ¶ 5.)  However, assuming, arguendo, that the insurance companies are the same entity, this Court's decision would be the same.  The notice requirement is one of multiple factors the Barnhart court used to distinguish Gallagher and Williams, in addition to the factual applicability of the "regular use" exclusion provision and Gallagher's narrow holding.  See Barnhart v. Travelers Home & Marine Ins. Co., 417 F. Supp. 3d 653, 657-58 (W.D. Pa. 2019).

**B.  There is No Genuine Dispute of Material Fact About Traveler's Denial of Plaintiff's Request for UIM Benefits**

Since the "regular use" exclusion provision is valid and enforceable, the Court must decide if there is a genuine dispute of material fact over Traveler's denial of UIM benefits under the Policy.  Pennsylvania courts routinely hold that a vehicle is available for "regular use" when they are "readily obtainable [or] accessible" for use.  <u>Prudential Prop. & Cas. Ins. Co v. Armstrong</u>, No. 03-4575, 2004 WL 603416, at *5-6 (E.D. Pa. Mar. 24, 2004).  "Determining whether a vehicle was available for the insured's 'regular use' is a fact-intensive inquiry.  However, where the facts are not in dispute, and reasonable minds cannot differ as to the result, the issue of coverage can be decided as a matter of law by the Court."  <u>Id.</u> at *2 (quotation marks and citation omitted).

Here, no material facts concerning Plaintiff's regular use of the tractor trailer are in dispute.  The "regular use" exclusion provision unambiguously states:

> We do not provide Underinsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by you or any "family member" while occupying or when struck by any motor vehicle that you or any "family member" owns; or that is furnished or available for your or any "family member's" regular use which is not insured for this coverage under this policy. . . .

(Doc. No. 20 at 3-4.)  At his deposition, Plaintiff testified that, at the time of the accident, the tractor trailer was furnished and available for his regular and daily use, used daily by him, and parked nightly at his home.  (<u>See</u> Doc. No. 20-5 at 10.)  Plaintiff's statements show the tractor trailer was readily obtainable or accessible for his regular use.  Additionally and tellingly, in his Response to Defendant's Motion, Plaintiff does not deny that the tractor trailer falls within the "regular use" exclusion provision, and he provides no material facts to rebut his deposition testimony.  (<u>See</u> Doc. No. 23 at 2-13.)  The parties also do not dispute that the Travelers Policy did not insure the tractor trailer involved in Plaintiff's accident.  (<u>See</u> Doc. No. 20 at 2.)  For these reasons, reasonable minds cannot differ that the tractor trailer was furnished and available for

Plaintiff's regular use and therefore not insured by the Travelers Policy.  Consequently, there is no genuine dispute of material fact for trial, and Defendant's Motion for Summary Judgment (Doc. No. 20) will be granted.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 20) will be granted.  An appropriate Order follows.